**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**RICHARD ROBERT JOHNSON,**

**Plaintiff,**

**v.**

**DAVID CRIST, Warden, and**
**DR. CHRISTOPHER CEMAN,**

**Defendants.**

**Civil File No. 00-309 (ADM/SRN)**

**REPORT AND RECOMMENDATION**

Richard Robert Johnson, Minnesota Correctional Facility -- Stillwater, 970 Pickett Street North, Bayport, MN 55003-1490, Plaintiff, pro se.

Kari Jo Ferguson, Assistant Minnesota Attorney General, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128, for Defendant David Crist.

Matthew J. Hanzel, Geraghty, O'Loughlin & Kenney, 1400 Ecolab University Center, 386 North Wabasha Street, St. Paul, MN 55102-1308, for Defendant Dr. Christopher Ceman.

SUSAN RICHARD NELSON, United States Magistrate Judge

Plaintiff, a prisoner of the State of Minnesota, has brought this action under 42 U.S.C. § 1983, seeking relief for alleged violations of his federal constitutional rights. Defendant David Crist has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, and Defendant Dr. Christopher Ceman has filed a separate motion entitled "Motion For Statutory Dismissal." The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Defendant Crist's motion for summary judgment be GRANTED, and that Defendant Ceman's motion to dismiss be DENIED.

FILED JAN 17 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND[1]

The record shows that Plaintiff has had problems with his left knee since approximately 1984, when he apparently injured his knee during a prison-yard football game. Since then, he has occasionally sought medical attention for his knee from prison health care providers.[2]

In 1995, Plaintiff was transferred to the Minnesota Correctional Facility at Stillwater, Minnesota, (MCF-STW). He was confined there at all time relevant to this lawsuit, and he is still confined there at this time.

In early 1998, Plaintiff began to complain more frequently about his knee. At one point in the spring of 1998, a doctor at MCF-STW, Dr. Ramos, ordered that x-rays be taken of Plaintiff's knee. However, the record does not clearly indicate whether any x-rays were actually taken, and if so, what (if anything) the x-rays revealed. Dr. Ramos also sent Plaintiff to a hospital in St. Paul for an evaluation of his knee. There, he was diagnosed with mild osteoarthritis in his left knee, and he was advised to lose weight and avoid playing football, softball and basketball. (Affidavit of Maureen Connor, ¶ 4.)

Over the course of the next two years, (i.e., during 1998 and 1999), Plaintiff was seen on numerous occasions by Defendant Dr. Christopher Ceman. Defendant Ceman

---

[1] The Court's understanding of the background of this case is based primarily on (1) Plaintiff's "Memorandum Of Law In Support Of Complaint And Demand For Jury Trial And Reply Objection [etc.]," (Docket No. 41), (2) the Affidavit of Maureen Conner, a prison health services administrator, (Docket No. 72), and (3) the "Supplemental Affidavit of Richard Robert Johnson [Plaintiff] With Exhibits," (Docket No. 79).

[2] Petitioner was released from prison in the late 1980s, but he returned to prison in 1991, after being convicted of first degree murder. (Affidavit of Sheryl Vezner, [Docket No. 70].)

is a medical doctor employed by Correctional Medical Services, Inc., a private company that has been retained by the Minnesota Department of Corrections to provide health care services to inmates at MCF-STW. Plaintiff came to Ceman seeking relief for ongoing pain in his left knee. Ceman gave Plaintiff Motrin and cortisone injections. He also advised Plaintiff to lose weight. (Plaintiff weighs more than 350 pounds and is considered to be morbidly obese.) (Affidavit of Maureen Conner, ¶s 5-8.)

In September and November of 1999, Plaintiff requested surgery on his left knee. Dr. Ceman evidently denied that request. The present record does not explain the type of surgery that Plaintiff was requesting, the reason why Plaintiff wanted surgery, or the reason why Dr. Ceman denied Plaintiff's request for surgery. In any event, instead of authorizing an operation, Dr. Ceman sent Plaintiff to physical therapy, and gave him instructions on how to lose weight. (Affidavit of Maureen Conner, ¶s 8-9.)

During the last month of 1999 and the first two months of 2000, Plaintiff and Dr. Ceman continued to disagree on how to treat the pain in Plaintiff's left knee. Dr. Ceman continued to recommend physical therapy and weight loss. He also prescribed shock absorbing inserts for Plaintiff's shoes, and recommended that Plaintiff should stop working (presumably at some prison job). (Affidavit of Maureen Conner, ¶s 11-12.) As far as the Court can tell, Plaintiff still wanted some kind of operation, and he also wanted to continue working without any medical restrictions.

At some point, apparently in late 1999 or early 2000, Plaintiff saw Defendant Crist, the Warden at MCF-STW, and mentioned that he had some concern about his medical treatment. (Second Affidavit of David Crist, [Docket No. 68], ¶ 3.) According to Plaintiff, when Crist asked "how things [were] going," Plaintiff "informed defendant Crist, about the

case review, and [that] Dr. Ceman may want him [Crist] to attend this meeting." ("Plaintiff's Objection to Defendant Crist's Motion For Summary Judgment," [Docket No. 62], p. 6, ¶ 18.) Plaintiff has not explained his reference to "the case review" or "this meeting," and it does not appear that he ever said anything else to Defendant Crist about his medical condition. Crist acknowledges that he talked to Plaintiff about his medical care, but he is unable to recall what he said to Plaintiff. He speculates that he probably called health services administrator Maureen Conner and passed along Plaintiff's concerns to her. Crist further states that he never received any written explanation of Plaintiff's medical concerns, and that he has "no direct involvement in decisions concerning the inmates' medical treatment." (Second Affidavit of David Crist, ¶s 2-4.)

On February 9, 2000, Plaintiff commenced his present lawsuit, seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. He claims that Defendants Ceman and Crist have violated his rights under the Eighth Amendment by deliberately disregarding his medical needs.

## II. DISCUSSION

### A. Defendant Ceman's Motion To Dismiss

Defendant Ceman has filed a motion asking that Plaintiff's claims against him be dismissed, because Plaintiff has not met the requirements of Minn.Stat. § 145.682. That statute requires every plaintiff in a Minnesota medical malpractice case to furnish two affidavits in support of his her or her claims.

> "The first affidavit ('expert review affidavit') must be submitted with the complaint and state that before commencing the lawsuit, plaintiff's attorney [or plaintiff himself in a pro se case] reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the

> plaintiff....
>
> The second affidavit ('expert disclosure affidavit') must be served upon the defendant within 180 days after commencement of the suit and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion."

Bellecourt v. United States, 784 F.Supp. 623, 636 (D.Minn. 1992), aff'd 994 F.2d 427 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994), citing Minn.Stat. § 145.682, subd. 2, subd. 3, and subd. 4. If a medical malpractice complainant fails to meet either one of the two affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal." Minn.Stat. § 145.682, subd. 6; see also Stroud v. Hennepin County Medical Center, 556 N.W.2d 552 (Minn. 1996); and Lindberg v. Health Partners, Inc., 599 N.W.2d 572 (Minn. 1999).

Defendant Ceman contends that Plaintiff's claims against him should be dismissed because Plaintiff has not submitted the first of the two affidavits required by § 145.682, subd. 2. Plaintiff admits (at least implicitly) that he has not provided the affidavits required by § 145.682, but he argues that his claims should not be dismissed because § 145.682 does not apply to this case. The Court agrees with Plaintiff.

Plaintiff has made it abundantly clear in his original complaint, and in all of his subsequent submissions, that he is seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. He is not alleging that Dr. Ceman was negligent or that Dr. Ceman committed medical malpractice. There is nothing in any of Plaintiff's submissions suggesting that he is seeking relief based on negligence, malpractice, or any other state common law tort theory. Instead, Plaintiff is claiming that Dr. Ceman has violated his Eighth Amendment rights; i.e., that Dr. Ceman has inflicted

"cruel and unusual punishment" against Plaintiff by deliberately disregarding Plaintiff's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).[3]

Defendant Ceman has cited no legal authority suggesting that Minn. Stat. § 145.682 is applicable to a constitutional rights claim brought under 42 U.S.C. § 1983. Section 145.682, on its face, is aimed at claims of "malpractice, error, mistake or failure to cure," (§ 145.682, subd. 2) – i.e., negligence, not "cruel and unusual punishment" or intentional disregard for serious medical needs. See Thomas v. James, 809 F.Supp. 448, 449 (W.D.La. 1993) (prisoner not required to submit claim to state's "medical review panel" before filing § 1983 action in federal court, because prisoner was not alleging malpractice, but that defendants had intentionally failed to provide needed medical treatment).

More importantly, Plaintiff's substantive rights and remedies under federal law, (i.e., 42 U.S.C. § 1983), cannot be diminished by a state statute affecting an individual's rights and remedies under state common law. This case involves a federal question -- i.e., whether Defendants violated Plaintiff's Eighth Amendment rights -- which has been brought to federal court pursuant to a federal statute, (§ 1983). Therefore, Plaintiff's substantive legal rights must be determined on the basis of federal law – not state law.[4]

---

[3] If this were a medical malpractice case, it undoubtedly would have been dismissed long ago for lack of subject matter jurisdiction. Plaintiff could not bring a common law malpractice claim (by itself) against Dr. Ceman in federal court, because his action would then lack the "federal question" needed to provide federal subject matter jurisdiction. See 28 U.S.C. § 1331. Subject matter jurisdiction could not be based on diversity of citizenship, (pursuant to 28 U.S.C. § 1332), because it appears that Plaintiff and all Defendants are Minnesota residents. Therefore, if Plaintiff were not asserting a federal cause of action, this case would have been previously dismissed on the Court's own motion. See Fed. R. Civ. P. 12(h)(3).

[4] While there does not appear to be any Minnesota case law directly addressing the issue presented here, the Court notes that the Northern District of Illinois has twice rejected

It is true that, under certain narrowly limited circumstances, federal courts will look to relevant state law to resolve legal issues arising in federal civil rights actions. This practice is authorized by 42 U.S.C. § 1988(a), which provides that:

> "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

However, § 1988(a) authorizes federal courts to "borrow" from state law in civil rights actions only "where federal law is unsuited or insufficient 'to furnish suitable remedies.'" Moor v. Alameda County, 411 U.S. 693, 703 (1973) (quoting § 1988(a)). Moreover, § 1988(a) clearly indicates that "state law shall only apply 'so far as the same is not inconsistent with' federal law." Wilson v. Garcia, 471 U.S. 261, 269 (1985). As the Supreme Court pointed out in Wilson, when Congress enacted § 1988(a), it "surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." Id.[5]

---

an argument similar to the one advanced by Defendant Ceman. Senisais v. Fitzgerald, 940 F.Supp. 196, 199-200 (N.D.Ill. 1996); Doe v. City of Chicago, 883 F.Supp. 1126, 1134 (N.D.Ill. 1994).

[5] The borrowing procedure authorized by § 1988(a) is substantially different from the one set forth in the Federal Tort Claims Act, ("FTCA"). The FTCA expressly provides, (at 28 U.S.C. § 1346(b)), that a plaintiff's claims are subject to, and governed by, the substantive law of the state in which the claims arose. Therefore, Minn.Stat. § 145.682

Here, there is no need to "borrow" § 145.682. Defendant Ceman has not identified any gap, omission or insufficiency in § 1983 that should be resolved by incorporating Minnesota state law pursuant to § 1988(a). Instead, Defendant Ceman is seeking to add an entirely new element to prisoner Eighth Amendment claims brought under § 1983 -- namely that prisoner-plaintiffs must comply with Minn.Stat. § 145.682 in order to obtain relief for violations of their federally protected civil rights. Adding such a requirement is not authorized by § 1988(a), however, because it is not needed to cure any deficiency in the federal cause of action provided by § 1983. If anything, adding such a requirement would seem to be inconsistent with the remedy provided by the federal civil rights statutes, because it would tend to diminish the availability of such remedy.

In sum, the Court can find no legal rationale, under § 1988(a) or otherwise, for engrafting the requirements of § 145.682 onto 42 U.S.C. § 1983. It will therefore be recommended that Defendant Ceman's "Motion For Statutory Dismissal" be denied.

B. Defendant Crist's Motion For Summary Judgment

Defendant Crist has filed a motion for summary judgment, raising defenses that are separate and distinct from the single defense raised by Defendant Ceman. Defendant Crist contends that he is entitled to summary judgment because Plaintiff has cited no evidence showing that Crist violated the Eighth Amendment. The Court agrees with that contention.

---

does apply to medical malpractice cases arising in Minnesota and brought in federal court under the FTCA. Oslund v. United States of America, 701 F.Supp. 710 (D.Minn. 1988); Bellecourt v. United States, supra; Anderson v. United States of America, No. Civ. 5-96-235 JRT/RLE, 1998 WL 92460 (D. Minn. 1998).

**(i) Standard of Review**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56 (c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56 (e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

**(ii) Legal Analysis**

"It has long been established that prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment when the officials are deliberately indifferent to the prisoner's serious medical needs." Boyd v. Knox, 47 F.3d

966, 968 (8th Cir. 1995), citing Estelle v. Gamble, 429 U.S. at 104. "A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." Boyd, supra, quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).

> "An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. [Citation omitted.] The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. [Citation omitted.] 'Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'' Hudson v. McMillian, 503 U.S. 1, 9,... (1992). '[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge.' Long v. Nix, 86 F.3d 761, 765 (8th Cir.1996). As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Id."

Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Thus, there are several elements to an Eighth Amendment claim brought against a prison official based on an alleged denial of medical care. First, the prisoner must show some specific "objectively serious medical need," i.e., one that is both readily discernible and involves "an excessive risk to the inmate's health." Second, the defendant must have been personally aware of the inmate's particular medical need and its seriousness. Third, the defendant himself must have been deliberately indifferent to such serious medical need. "Deliberate indifference may be demonstrated," for example, "by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment." Dulany, 132 F.3d at 1239.

As Defendant Crist has correctly pointed out, a prison official who holds a supervisory position cannot be held vicariously liable under 42 U.S.C. § 1983 for the unconstitutional acts or omissions of his subordinates. Boyd, supra. The doctrine of respondeat superior is simply not applicable in § 1983 cases. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). A supervisory prison official, such as Defendant Crist, can be held liable for deliberate indifference to a prisoner's serious medical needs only if he was personally involved in the prisoner's medical care. Boyd, supra.

A supervisory prison official, such as Crist, can be personally liable where a subordinate's violation of the plaintiff's constitutional rights is directly attributable to the supervisory official's own personal failure to properly train or supervise the subordinate. Askew v. Millerd, 191 F.3d 953, 958-59 (8th Cir. 1999). Such a claim can be sustained, however, "'only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts'" by the subordinate. White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994), quoting Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir.), cert. denied, 493 U.S. 993 (1989). Once again, the plaintiff must show some deliberate indifference on the part of the defendant who is being sued.

In this case, there are several fatal flaws in Plaintiff's Eighth Amendment claim against Defendant Crist.

First, Plaintiff has offered no evidence showing that he has any "objectively serious medical need." "To constitute an objectively serious medical need or a deprivation of that need,... the need or deprivation alleged must be either obvious to the layperson or supported by medical evidence." Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995). The

record in this case certainly shows that Plaintiff has a problem with his left knee, and there is no reason to doubt that he suffers pain as a result of that problem. However, Plaintiff has not demonstrated that he has any genuine need for any specific medical care or treatment beyond that which has been provided to him. Furthermore, he has offered no evidence suggesting that whatever medical needs he might have are "objectively serious," i.e., that such needs are readily apparent to a layperson or plainly substantiated by his medical records. Nor has Plaintiff offered any evidence showing that he suffers from any condition that creates an "excessive risk" to his health.[6] In the absence of some evidence demonstrating that Plaintiff has some specific, readily identifiable, "serious medical need," Defendant Crist cannot be found to have violated Plaintiff's Eighth Amendment rights.

Second, even if Plaintiff could show some serious medical need, he has not shown that Defendant Crist was aware of it. Crist's affidavit indicates that, to the best of his knowledge, he never received any written correspondence from Plaintiff regarding any medical problem. (Second Affidavit of David Crist, ¶ 4.) Plaintiff has made no effort to contradict that assertion. The record shows that Plaintiff once told Crist about a "case review" meeting that Dr. Ceman may have wanted him to attend, but there is nothing to indicate that Plaintiff said anything to Crist about the nature or severity of Plaintiff's knee problem at that time.

Furthermore, even if Plaintiff does have a serious medical need and even if Crist

---

[6] Plaintiff broadly contends that his knee problem has caused him to gain weight, which, in turn, has caused him to suffer from unhealthful hypertension. He has offered nothing, however, to support this theory. Indeed, his medical records strongly suggest that his excess weight has been a substantial cause of his knee problems, rather than the other way around.

was aware of it, there is no evidence showing that Crist has deliberately disregarded Plaintiff's medical needs. Crist's affidavit states that he "do[es] not and would not influence the doctors' treatment decisions regarding any of the inmates incarcerated at MCF-STW." (Affidavit of David Crist, [Docket No. 59], ¶ 3.) Again, Plaintiff has offered no evidence to contradict that statement. <u>He has provided no evidence suggesting that Defendant Crist questioned, vetoed, denied, delayed, or otherwise interfered with, any treatment recommendation by any health care provider at MCF-STW.</u>

Finally, the Court has considered Plaintiff's suggestion that Defendant Crist violated the Eighth Amendment by failing to adequately train or supervise his subordinates. Once more, however, Plaintiff has not cited any evidence to support his claim. In fact, Plaintiff has not even clearly identified which subordinate(s) supposedly violated his constitutional rights. It can reasonably assumed, of course, that Dr. Ceman is the subordinate in question; but Plaintiff has not shown how Defendant Crist should have trained or supervised Dr. Ceman differently. By Plaintiff's own admission, Dr. Ceman has examined Plaintiff on "numberless" occasions, (Plaintiff's Memorandum, [Docket No. 41], p. 6, ¶ 36), and the record shows that Dr. Ceman has attempted to treat Plaintiff's health problems by providing medications, shots, physical therapy, and medical advice (i.e., to restrict his work activities and lose weight). If Plaintiff believes that Defendant Crist should have second-guessed and overruled Dr. Ceman's medical opinions, and if Plaintiff's failure-to-train-or-supervise claim is based on that belief, then his claim clearly fails. It certainly is <u>not</u> the proper role of a lay prison official to review and override medical decisions made by trained medical professionals such as Dr. Ceman.

To sustain a failure-to-train-or-supervise claim, Plaintiff must be able to point to

some particular facts, supported by evidentiary submissions, showing what, specifically, Crist himself did wrong. Conclusory assertions are not sufficient to withstand a motion for summary judgment. See Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999); Miller v. Solem, 728 F.2d 1020, 1026 (8th Cir.), cert. denied, 469 U.S. 841 (1984). Because Plaintiff has failed to explain how he might prove that Crist did not properly train or supervise his subordinate(s), his failure-to-train-or-supervise claim cannot survive summary judgment.

**III. CONCLUSION**

For the reasons discussed above, the Court concludes that Defendant Ceman's "Motion For Statutory Dismissal" must be denied, and that Defendant Crist's motion for summary judgment must be granted. Defendant Ceman has not shown that the requirements of Minn.Stat. § 145.682 are applicable to claims brought under 42 U.S.C. § 1983 for alleged violations of a plaintiff's federal constitutional rights.[7] However, Plaintiff has not effectively refuted Defendant Crist's motion for summary judgment. Plaintiff has cited no evidence that would allow a jury to conclude that he has any objectively serious medical needs, or that Defendant Crist deliberately disregarded any such needs. It will therefore be recommended that the action be dismissed with prejudice as to Defendant Crist.

---

[7] Defendant Ceman's memorandum in support of his motion to dismiss includes a footnote indicating that he "has asserted other affirmative defenses in this action (i.e., qualified immunity, etc.) and reserves the right to raise them by way of motion for summary judgment at a later time if necessary." By separate order entered contemporaneously with this Report and Recommendation, the Court has directed that any further dispositive motions in this case must be served, filed and heard by March 15, 2001.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant Dr. Christopher Ceman's "Motion For Statutory Dismissal," (Docket No. 54), be DENIED;

2. Defendant David Crist's Motion For Summary Judgment, (Docket No. 57), be GRANTED; and

3. This action be dismissed with prejudice as to Defendant David Crist.

Dated: January 17, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.